## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

**KEITH THOMPSON (#109223)**                              **CIVIL ACTION NO.**

**VERSUS**                                                **20-185-BAJ-EWD**

**EDWARD RUSS, ET AL.**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on August 29, 2023.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

**KEITH THOMPSON (#109223)**                                **CIVIL ACTION NO.**

**VERSUS**                                                  **20-185-BAJ-EWD**

**EDWARD RUSS, ET AL.**

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court are Cross-Motions for Summary Judgment, filed by Keith Thompson ("Plaintiff"), an inmate representing himself, who is currently housed at Dixon Correctional Institute, and by Edward Russ ("Russ"), the only remaining defendant in this case.[1] Each party has opposed the other party's motion.[2] Russ also filed a Reply Memorandum in support of his motion.[3] Oral argument is not necessary. After carefully considering the law, the facts and evidence in the record, and the submissions of the parties, Russ is entitled to qualified immunity for the acts of excessive force and deliberate indifference that Plaintiff alleges Russ committed on April 9, 2019. As such, it is recommended that Russ's Motion for Summary Judgment[4] be granted, dismissing all claims against him by Plaintiff, and that Plaintiff's Motion for Summary Judgment[5] be denied.

**I.    BACKGROUND**

    **A.    Factual Background**[6]

Plaintiff is an inmate in custody of the Louisiana Department of Safety and Corrections, who at all times relevant to this suit, was housed at the Louisiana State Penitentiary ("LSP") in

---

[1] R. Docs. 46, 49.
[2] R. Docs. 48, 50.
[3] R. Doc. 51.
[4] R. Doc. 49.
[5] R. Doc. 46.
[6] Although Plaintiff filed a Statement of Facts, his Statement of Facts does not fully comply with Local Civil Rule 56(f) in that each statement is not followed by a citation to the specific page or paragraph of identified record material supporting the assertion. In fact, Plaintiff's Statement of Facts does not cite to any evidence in the record. Additionally, in his Opposition, Plaintiff does not properly challenge the Statement of Undisputed Facts filed with Russ's Motion for Summary Judgment. However, because Plaintiff is representing himself and because his Opposition is sworn (R. Doc. 50, p. 7), all information was considered in evaluating the cross motions for summary judgment.

Angola, Louisiana.[7] On April 9, 2019, an incident occurred while Plaintiff was being transferred to a new cell in Camp C at LSP.[8] Upon his arrival at Camp C, Plaintiff refused to be placed in a cell there. Plaintiff, who was fully mechanically restrained, was temporarily placed in a shower cell.[9] Plaintiff continued to refuse to enter his new cell and was told that Warden DeMars had ordered the use of chemical agents if Plaintiff continued to refuse to enter his newly-assigned cell.[10] Upon what Plaintiff characterizes as a "final refusal,"[11] it is undisputed that Russ sprayed Plaintiff one time with 22 grams of chemical agent.[12] After being sprayed with the chemical agent, Plaintiff began having trouble breathing.[13] Russ brought Plaintiff his inhaler, which was with Plaintiff's belongings in the Camp C lobby.[14] Russ then called medical to see Plaintiff, after which Plaintiff was taken to the emergency room.[15]

### B. Procedural Background

On March 29, 2020, Plaintiff filed a Complaint pursuant to 42 U.S.C. § 1983, seeking compensatory and punitive damages, as well as a preliminary injunction,[16] against Defendants

---

[7] R. Doc. 49-2, at ¶ 1. *See also* R. Doc. 1, p. 3. The incident that forms the basis of this suit occurred while Plaintiff was housed at LSP. Plaintiff is now housed at Dixon Correctional Institute.
[8] R. Doc. 49-2, at ¶¶ 3-4. *See also* R. Doc. 1, p. 5; R. Doc. 50, at ¶ 4.
[9] R. Doc. 49-2, at ¶¶ 5-6. *See also* R. Doc. 1, p. 5; R. Doc. 50, at ¶ 5.
[10] R. Doc. 49-2, at ¶ 8; R. Doc. 1, p. 5. In his Opposition, Plaintiff says, "I never refused to be restrained or to exit the shower. I simply refused to live on that tier and was willing to accept another disciplinary report from Russ." R. Doc. 50, at ¶ 9. The material fact alleged by Russ is that Plaintiff refused to enter his new cell. R. Doc. 49-2, at ¶¶ 5, 8, 13, and 20. Plaintiff also admitted that he refused to enter the new cell. *See* R. Doc. 1, p. 5 ("Russ said Warden DeMars gave an order to use chemical agents if Mr. Thompson continued to refuse to enter the cell he had been reassigned to.").
[11] R. Doc. 1, p. 5.
[12] R. Doc. 49-2, at ¶ 19; R. Doc. 1, p. 5. *See also* R. Doc. 48-1, at ¶ 1.
[13] R. Doc. 48-1, at ¶ 11; R. Doc. 1, p. 5.
[14] R. Doc. 49-2, at ¶ 22. *See also* R. Doc. 1, p. 5.
[15] R. Doc. 49-2, at ¶¶ 23-24. *See also* R. Doc. 1, p. 5.
[16] In his initial Complaint, Plaintiff sought a preliminary injunction "prohibiting erasure or destruction of all mounted and body camera footage from CBD Administrative segregation and Camp-C Tiger Unit lobby and tier where this incident transpired between the hours of 12:noon and 5:00 pm on April 09, 2019." R. Doc. 1, p. 6 ¶ VI. This Court denied Plaintiff's request for injunctive relief without prejudice because Plaintiff failed to meet the requirements for injunctive relief. R. Doc. 8, pp. 12-13; R. Doc. 10, p. 3. In his Amended Complaint, Plaintiff does not correct the deficiencies noted by this Court regarding his request for injunctive relief. R. Doc. 13. This Court, after reviewing Plaintiff's Amended Complaint, specifically allowed Plaintiff "to proceed in this case **ONLY** with regard to his individual capacity claims for monetary damages against Edward Russ for excessive force and deliberate indifference arising from the use of chemical agent on April 9, 2019." R. Doc. 14, p. 4 (emphasis in original). Thus, Plaintiff's claim for injunctive relief has already been dismissed by this Court. However, even if the claim for injunctive relief

2

Edward Russ, a Security Captain at LSP, where Plaintiff was housed at the time of the incident at issue here; T. Kelly, also a Security Captain at LSP; and Shannon DeMars, Assistant Warden at LSP.[17] Only Russ remains as a defendant in this case. Upon screening Plaintiff's Complaint under 28 U.S.C. §1915A, and upon review under 28 U.S.C. § 1915(e), the Court, on its own motion, declined the exercise of supplemental jurisdiction over state law claims; dismissed with prejudice Plaintiff's due process claims arising from the disciplinary proceedings against him, as well as his claims for monetary damages against Defendants in their official capacities; and dismissed without prejudice Plaintiff's claims for retaliation, conspiracy, and deliberate indifference; Plaintiff's potential claims against Defendant T. Kelly for failure to protect and excessive force; and Plaintiff's potential claims against Defendant Shannon DeMars for excessive force.[18] The Court allowed Plaintiff to file an Amended Complaint to attempt to cure the deficiencies regarding those claims that were dismissed without prejudice. Plaintiff filed his amended complaint on September 27, 2022.[19]

After reviewing Plaintiff's Amended Complaint, this Court issued an Order allowing Plaintiff to proceed only with "his individual capacity claims for monetary damages against Edward Russ for excessive force and deliberate indifference arising from the use of chemical agent on April 9, 2019."[20] After service of process and a period for fact discovery,[21] the parties filed the pending cross motions for summary judgment, and opposition memoranda.[22]

---

had not previously been dismissed, the recommendation to grant Russ's Motion for Summary Judgment and to dismiss all claims by Plaintiff against Russ renders the injunctive relief moot.
[17] R. Doc. 1, p. 4. The Complaint was docketed with this Court on March 31, 2020, but was signed on March 29, 2020. R. Doc. 1, p. 7.
[18] R. Docs. 8, 10.
[19] R. Doc. 10, p. 3; R. Doc. 13. The Amended Complaint was docketed with this Court on September 30, 2022, but was signed on September 27, 2022. R. Doc. 13, p. 4.
[20] R. Doc. 14, p. 4.
[21] R. Doc. 15.
[22] R. Docs. 46, 48, 49, 50, 51.

## II.   Law and Analysis

### A. Summary Judgment Standard

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law.[23] "A 'material' fact is one 'that might affect the outcome of the suit under governing law,' and a fact issue is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party."[24] A party moving for summary judgment must inform the court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no genuine issue of material fact.[25] The court must deny a motion for summary judgment if the movant fails to meet his burden of showing that there is no genuine issue of material fact.[26]

If the moving party carries its summary judgment burden of proof, the opposing party must direct the court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor.[27] This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence.[28] Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.[29] Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment

---

[23] Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby*, 477 U.S. 242, 247 (1986).
[24] *McCullough v. Wright*, 824 Fed.Appx. 281, 284 (5th Cir. 2020), quoting *Renwick v. PNK Lake Charles, L.L.C.*, 901 F.3d 605, 611 (5th Cir. 2018) (some internal quotations omitted).
[25] *Celotex Corp.*, 477 U.S. at 323.
[26] *Turbacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995).
[27] *Turbacex*, 45 F.3d at 954.
[28] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[29] *Celotex Corp.*, 477 U.S. at 323.

in favor of the non-moving party.[30]  In resolving a motion for summary judgment, the court must review the facts and inferences in the light most favorable to the non-moving party, and the court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes.[31]

### B. Russ is Entitled to Qualified Immunity

As both a defense to Plaintiff's Motion for Summary Judgment, as well as the basis for his own Motion for Summary Judgment, Russ argues that he is entitled to qualified immunity.[32]  The qualified immunity defense operates to protect public officials who are performing discretionary tasks if their actions were objectively reasonable considering clearly established law.[33] The Fifth Circuit has explained the qualified immunity analysis as follows:

> a court considers (1) whether the facts alleged or shown by the plaintiff "make out a violation of a constitutional right," and (2) whether that right was "clearly established at the time of [the] defendant's alleged misconduct." This second prong "turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." Objective reasonableness is a question of law for the court to decide, and a defendant's subjective state of mind is irrelevant to the inquiry. "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what [s]he is doing violates that right." "A right is clearly established only if relevant precedent 'ha[s] placed the ... constitutional question beyond debate.'" "The pages of the *United States Reports* teem with warnings about the difficulty of placing a question beyond debate," and doing so is "especially difficult in excessive-force cases." Qualified immunity applies unless the plaintiff satisfies both prongs, and courts may consider them in any order. Under either prong, courts deciding a motion for summary judgment must construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[34]

The assertion of the qualified immunity defense alters the summary judgment burden of proof.[35]  Once a defendant pleads qualified immunity, the burden shifts to the plaintiff, who "must

---

[30] *Little*, 37 F.3d at 1075.
[31] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).
[32] R. Doc. 48, pp. 3-15; R. Doc. 49, at ¶ 3; R. Doc. 49-1, pp. 4-16.
[33] *Huff v. Crites*, 473 Fed.Appx. 398, 399 (5th Cir. 2012).
[34] *Amos v. Jefferson*, 861 Fed.Appx. 596, 603 (5th Cir. 2021) (citations omitted).
[35] *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005).

rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct."[36] "The plaintiff bears the burden of negating the defense and cannot rest on conclusory allegations and assertions but must demonstrate genuine issues of material fact regarding the reasonableness of the officer's conduct."[37]

### 1. Russ Is Entitled to Qualified Immunity as to Excessive Force because the Law was not Clearly Established at the Time of the Incident that Chemical Agent Could Not Be Used Against a Non-Compliant, Restrained Prisoner

Plaintiff claims that Russ's use of chemical agent on April 9, 2019 was excessive because Plaintiff was in full mechanical restraints at the time Russ deployed the chemical agent against him.[38] Plaintiff argues this was a violation of prison regulations, which only permit deployment of chemical agent if an inmate continues to engage in disruptive behavior that may lead to loss of life, serious injury to a person(s), extensive destruction of property or a serious situation which may jeopardize the safety, security and good order of the facility.[39] Plaintiff also seems to imply that, because he was already in restraints, prison regulations do not permit the use of chemical agent against him for noncompliance with orders. Russ admits that Plaintiff was fully mechanically restrained and locked in a shower cell at the time of the incident.[40]

The relevant question in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation he confronted. To defeat an assertion of qualified immunity, a plaintiff "must point this court to a legislative directive or case precedent that is sufficiently clear such that every reasonable official would have understood that what he is doing violates that law."[41] "[F]or a right

---

[36] *Gates v. Texas Dep't of Prot. and Reg. Servs.*, 537 F.3d 404, 419 (5th Cir. 2008), citing *Michalik*, 422 F.3d at 262.
[37] *Michalik*, 422 F.3d at 262.
[38] See R. Doc. 48-3, pp. 4-5 (p. 12, lines 16-17; p. 13, lines 12-13).
[39] R. Doc. 46-2, p. 5.
[40] R. Doc. 48-1, ¶ 2.
[41] *Keller v. Fleming*, 952 F.3d 216, 225 (5th Cir. 2020) (citations omitted).

to be clearly established, 'existing precedent must have placed the statutory or constitutional question beyond debate.'"[42] Additionally, qualified immunity is inappropriate only where the officer had "fair notice"—"in light of the specific context of the case, not as a broad general proposition"—that his particular conduct was unlawful.[43] The Fifth Circuit has cautioned district courts that "overcoming qualified immunity is especially difficult in excessive-force cases," in part, because such claims are highly fact dependent, and often turn on "split-second decisions."[44]

It is clearly established that an officer may not generally use gratuitous force against a prisoner who is submissive. For example, in *Cowart v. Erwin*,[45] the Fifth Circuit found that "in 2009, the time of the incident, it was well-established, in sufficiently similar situations, that officers may not 'use gratuitous force against a prisoner who has already been subdued … [or] incapacitated.'" There, the plaintiff claimed that four officers beat him without cause. One of the officers was found liable by a jury as to all claims. The evidence in *Cowart* established that the officers had ordered the inmates to line up against the wall and assume a submissive position—on their knees, hands behind their heads, and elbows touching the wall. The plaintiff asked for permission to stand because the position was uncomfortable but was denied permission. The plaintiff stood anyway and was forced back to his knees and held in position by two officers. The plaintiff admitted that he "mouthed off," at which point he was punched twice in the face, taken to the ground, beaten, and sprayed with mace.[46] The Fifth Circuit rejected the defendant's claim of qualified immunity, finding that the force used was excessive and that it was clearly established that such force could not be used against a subdued person.[47]

---

[42] *See White v. Pauly*, 580 U.S. 73, 79 (2017) (*per curiam*), quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015).
[43] *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (*per curiam*) (citation omitted).
[44] *Morrow v. Meachum*, 917 F.3d 870, 876 (5th Cir. 2019) (citations omitted).
[45] 837 F.3d 444, 454 (5th Cir. 2016).
[46] 837 F.3d at 449.
[47] 837 F.3d at 454-55.

To the contrary, in *Amos*,[48] decided five years after *Cowart*, the Fifth Circuit found a corrections officer was entitled to qualified immunity for claims arising from administering chemical agent against an inmate who exhibited "ongoing aggressive and disorderly behavior … including … expressions of intent to defy orders …" notwithstanding that the prisoner was handcuffed and/or three officers were holding the prisoner at the time. Specifically, the *Amos* court stated, "[E]ven viewing the facts in the light most favorable to [the plaintiff], we cannot conclude that every reasonable officer would have known that spraying [the plaintiff] with a chemical agent after [the plaintiff] displayed repeated combativeness and belligerence was unlawful. Stated differently, given the context, [the defendant's] conduct was objectively reasonable in light of clearly established law concerning the use of brief sprays of chemical agents to maintain or restore discipline or to compel compliance with an order, and the law's recognition that officers often have to 'act quickly and decisively.' No law put [the defendant] on notice that she could not make a split-second decision to administer a brief spray of a chemical agent on a prisoner who continually displayed aggression and hostility and who was either actively defying [the defendant's] commands or had been defiant a mere moment before [the defendant] took action."[49]

The Parties do not disagree that Russ only sprayed Plaintiff once with 22 grams of chemical agent.[50] Here, Russ used a single spray of chemical agent in response to Plaintiff's repeated refusals to comply with orders. Because the Fifth Circuit has found that a single spray of chemical

---

[48] 861 Fed.Appx. at 599, 603.
[49] 861 Fed.Appx. at 604. *See also Baldwin v. Stalder*, 137 F. 3d 838, 841 (5th Cir. 1998) (corrections officer did not use excessive force when spraying mace down the middle of a bus containing inmates who were in four-point restraints, where inmates were "causing a disturbance" on the bus); *Scott v. Hanson*, 330 Fed.Appx. 490, 491 (5th Cir. 2009) (court found support in record for jury's conclusion that official did not use excessive force when "mace was briefly used" on an inmate who was restrained inside his cell because of the inmate's "continued refusal to comply with orders to cease his disruptive behavior").
[50] *See* R. Doc. 13, ¶ 8; R. Doc. 48-1, at ¶ 1; and R. Doc. 49-2, p. 3 (referencing use of chemical agent on Plaintiff with can beginning at 348 g and ending at 326 g). This Court has previously found that a similar amount of chemical agent is not unconstitutionally excessive. *See Calloway v. Pinkey*, No. 20-562, 2023 WL 4360162, *4 (M.D. La. June 6, 2023) (finding that 25 grams of chemical agent was not excessive and collecting cases).

agent against a non-compliant inmate is not an excessive use of force, even when a prisoner is handcuffed, or otherwise under the physical control of corrections officers, Plaintiff cannot show that it was beyond debate that Russ was not entitled to act as he did in using the chemical agent under the undisputed facts of this case. Accordingly, Russ is entitled to qualified immunity as to Plaintiff's excessive force claim.

### 2. Plaintiff Has Not Overcome Russ's Qualified Immunity Defense as to Plaintiff's Deliberate Indifference Claim Related to the Use of Chemical Agent

Plaintiff also claims that Russ exhibited deliberate indifference by using chemical agent against Plaintiff notwithstanding Russ's knowledge that Plaintiff suffers from asthma.[51] While Plaintiff does not cite to any record evidence in support of this assertion, he testified in his deposition, attached as an exhibit to Russ's Motion for Summary Judgment, that Russ had called an ambulance or EMT services for him on several occasions before this incident because of his asthma.[52] Russ categorically denies this assertion, stating in an unsworn declaration made pursuant to 28 U.S.C. § 1746, that "[he] was unaware that Mr. Thomson had asthma at the time [he] sprayed him with chemical agent, and Mr. Thompson did not inform me prior to spraying him."[53] Regardless of this apparent factual dispute, Russ is entitled to qualified immunity with regard to Plaintiff's deliberate indifference claim because Plaintiff has not shown that the law was clearly established at the time of the incident that a corrections officer could not use a single burst of chemical agent on a prisoner refusing orders, even if that prisoner had asthma, but no medical duty status precluding the use of chemical agent.[54]

---

[51] R. Doc. 46-2, pp. 8-9.
[52] R. Doc. 49-4, p. 7 (p. 21, line 14 to p. 22, line 10).
[53] R. Doc. 49-3, at ¶ 9.
[54] Russ says generally officers are allowed to spray offenders with chemical agent, even if they have asthma, unless the offender has a specific duty status which states chemical agent is not to be used on him." R. Doc. 49-3, ¶13. Plaintiff does not deny that he lacks a medical duty status that specifically prohibits the use of chemical agent against him but says that is not relevant. R. Doc. 50, ¶11. The Fifth Circuit has explained a "duty status" as "a written designation assigned by a prison medical doctor indicating an inmate's physical or mental ability to perform hard

9

As with the excessive force claim, Plaintiff points to no case law or statutory provision to establish beyond debate that chemical agent cannot be used against an asthmatic prisoner with no medical duty status precluding the use of chemical agent, who is handcuffed and refusing orders, regardless of whether the officer knows of the prisoner's condition. Nor has this Court found any. To the contrary, there is case law, though not controlling, that suggests otherwise.[55] The inability to show that controlling case law clearly establishes that chemical agent cannot be used in the situation faced by Russ is fatal to Plaintiff's deliberate indifference claim.[56]

It does not appear that Plaintiff is complaining about any deliberate medical indifference after he was subjected to chemical agent. Even if he did, such claim would fail on the summary judgment evidence in the record. It is undisputed that, when Plaintiff developed asthma symptoms after exposure to chemical agent, Russ did not act with disregard to Plaintiff's medical needs. Both parties have acknowledged that right after spraying Plaintiff with the chemical agent, Russ retrieved Plaintiff's inhaler for him. After giving Plaintiff his inhaler, Russ then called medical to come assess Plaintiff.[57]

---

labor in accordance with his sentence. Duty statuses are generally assigned by physicians following a medical evaluation, and they are subject to change depending on changes in the medical condition of a particular inmate. Duty statuses may range from no duty (indicating a need for bed rest), to light duty or regular duty with restrictions, and finally to regular duty without restrictions (indicating the inmate is capable of performing any and all hard labor)." *Armant v. Stalder*, 287 Fed.Appx. 351, 352 n.1 (5th Cir. 2008). It appears undisputed that Plaintiff did not have a medical duty status that prevented the use of chemical agent against him.

[55] *See, e.g., Schultz v. Doher*, 335 F.Supp.3d 177, 187 (D. Mass. 2018) (finding officer was not deliberately indifferent to inmate's safety in using chemical spray on an inmate with asthma "briefly and sparingly," noting officials "implored the plaintiff to exit his cell and unambiguously warned him that they would have to use an agent if he refused").

[56] *See Kovacic v. Villarreal*, 628 F.3d 209, 214 (5th Cir. 2010) (reversing denial of qualified immunity, in part, for failure to satisfy the clearly established prong, finding "Plaintiffs have not referenced a single case in either the district courts or the court of appeals of this circuit" that alleged similar facts.).

[57] R. Doc. 46-2, p. 9 ("Upon plaintiff instantly experiencing difficulty breathing defendant retrieved plaintiff's inhaler and called for emergency assistance."); R. Doc. 46-4, p. 1 ("Offender Thompson was given his inhaler after chemical agent was administered."); R. Doc. 49-3, at ¶¶ 10-11 ("After being sprayed, Mr. Thompson informed me of his asthma, and I immediately retrieved his inhaler from his belongings in the Camp C lobby. In accordance with the Use of Force Policy, I proceeded to call for medical to come see Mr. Thompson after he had been sprayed."). *See Gobert v. Caldwell*, 463 F.3d 339, 346 n. 24 (5th Cir. 2006), quoting *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) ("Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference."); *Bejaran v. Cruz*, 79 Fed.Appx 73, 74 (5th Cir. 2003) ("Bejaran's admission in his complaint that the prison medical staff took x-rays of his back and … gave him 'generic,' 'mild medications' refute his assertion of deliberate indifference to his medical needs.").

### III. CONCLUSION

Russ's assertion of qualified immunity shifts the burden of proof in evaluating summary judgment evidence and requires Plaintiff to rebut the defense by establishing that the Russ's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of Russ's conduct. Plaintiff has pointed to no controlling law in this case to establish that it is beyond debate that a corrections officer may not use chemical agent against a restrained, non-compliant, asthmatic prisoner to gain compliance. Because Plaintiff has not done so, Russ is entitled to qualified immunity as to Plaintiff's claims for excessive force and for deliberate indifference arising out of the April 9, 2019 deployment of chemical agent by Russ against Plaintiff.

### IV. RECOMMENDATION

Accordingly,

**IT IS RECOMMENDED** that the Motion for Summary Judgment,[58] filed by Plaintiff Keith Thompson (#109223) be **DENIED**, as Plaintiff has not overcome Defendant Russ's qualified immunity defense.

**IT IS FURTHER RECOMMENDED** that, considering his qualified immunity defense, the Motion for Summary Judgment,[59] filed by Defendant Edward Russ, be **GRANTED**, and that all claims against Defendant Russ by Plaintiff be **DISMISSED WITH PREJUDICE**.

Signed in Baton Rouge, Louisiana, on August 29, 2023.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[58] R. Doc. 46.
[59] R. Doc. 49.

11